STATE, LUCIUS D. TOMPKINS, PROSECUTOR, v. JOHN H. SCHOMP, OVERSEER, &c., OF THE TOWNSHIP OF MONTGOMERY, IN THE COUNTY OF SOMERSET.

1. An order of two justices under the Bastardy act, must recite such facts as show their jurisdiction over the matter they adjudicated upon.
2. What facts are requisite under the present act, to confer jurisdiction on two justices, stated.
3. When the order of two justices is defective because their jurisdiction does not appear, an appeal therefrom does not waive the objection, nor confer on the Sessions authority to consider and adjudicate upon the matter; if, in such a case, the Sessions do proceed and make an order, both orders must fail for want of jurisdiction.

---

On *certiorari.* In matter of bastardy.

Argued at June Term, 1883, before Justices SCUDDER, REED and MAGIE.

For the prosecutor, *G. Collins.*

For the defendant, *John Schomp.*

The opinion of the court was delivered by

MAGIE, J. The proceedings in bastardy disclosed by this return, were commenced in the month of July, 1880. They should have been conducted under the law on that subject, contained in the Revision. But the overseer and justices ignored the existence of the Revision, and were guided by

forms drawn in accordance with the previously existing law. Thus the original warrant directs the putative father to be apprehended and brought before some justice of the peace, to find security to abide and perform such orders as should be made in pursuance of the statute of April 10th, 1846, and the supplements thereto, all of which were then repealed and superseded by the act entitled "An act for the maintenance of bastard children," approved March 27th, 1874. *Rev., p.* 70. The arrested person was discharged from custody upon giving a bond unauthorized by the present act. He did, however, afterward appear, on being notified, before two justices of the peace, who proceeded to determine the question of the paternity of the bastard, and who made an order adjudging the person charged to be the father thereof and fixing the amount of maintenance to be paid by him.

From this order the putative father appealed to the Sessions. Jurisdiction of the appeal was assumed, and after a long-contested trial, upon the verdict of a jury that the appellant was "guilty," the Sessions made another order respecting the maintenance of the bastard.

All these facts appear from the return of the Sessions, which includes the whole proceedings. The preliminary proceedings were transmitted to that court in pursuance of the directions of section 18 of the present act, which require the two justices to send to the clerk of the Sessions the bond of the person charged, the orders of maintenance and sustenance, and all the papers connected therewith.

Prosecutor has filed many reasons upon which he claims that these proceedings ought to be set aside. As they largely relate to errors alleged to exist by reason of the use of forms adapted to the provisions of the old act and sanctioned by decisions thereunder, it may be well to briefly consider some of the changes produced by the Revision.

By the act of April 10th, 1846, as amended by the supplement of March 18th, 1858, jurisdiction of the question of the paternity of a bastard child was acquired by any two justices of the peace of the proper county to whom the proper overseer

of the poor made a proper application. The preliminary complaint and examination, under which the party charged could be committed unless he gave bond, was not essential to the validity of the proceedings before the two justices. If resorted to and bond was given, the township authorities were bound to proceed and procure the proper orders. If not resorted to, they could take the same proceedings and procure like orders.

The revised act provides for a mode of procedure quite unlike the old one. The jurisdiction of the two justices is not evoked by the direct application of an overseer of the poor. Certain preliminary proceedings are required before the two justices become authorized to adjudicate upon the question. The preliminaries required are the following :

1. When any woman is delivered of a bastard or declares herself to be pregnant of a child likely to be born a bastard, and such bastard is chargeable or likely to become chargeable to any township, any overseer of the poor of the township where the woman may be, or of the township where her legal settlement may be, may apply to a justice of the peace of the county where the woman may be, to make inquiry into the facts and circumstances. *Rev., p.* 70, § 1.

2. The justice so applied to, is required to ascertain the father of the bastard, by the examination of the woman on oath, and upon such other testimony as may be offered. Upon such ascertainment of the father, the justice is to issue a warrant for his apprehension, requiring him to be brought before said justice for the purpose of having an adjudication respecting the filiation of the bastard. *Rev., p.* 70, § 2. When the reputed father is arrested in another county, he may give a bond upon which he may be discharged from custody. If he fails to give bond he is to be taken immediately before the justice who issued the warrant. *Rev., pp.* 70, 71, §§ 3–6.

3. Upon the person charged being brought before the justice who issued the warrant, that justice is to immediately call to his aid another justice of the same county ; the two justices thus brought together are thereupon given jurisdiction over the subject. *Rev., p.* 71, § 7. In case the arrest is in another

county and a bond is given, it is to be returned to the justice who issued the warrant, who is thereupon likewise to call to his aid another justice of the same county, and the two justices thus brought together, are also given jurisdiction over the subject. *Rev., p.* 72, §§ 15, 16.

From this review, it appears that the jurisdiction of the two justices is acquired when there has been a proper application to a justice of the peace of the proper county ; when he has ascertained the father of the bastard by an examination of the mother and other evidence, if offered ; when, upon his warrant, the person so ascertained to be the father, has been arrested and brought before him in custody, or in case of his arrest in another county, when the warrant has been returned with the bond required by the act, and when such justice has called to his aid another justice of the peace of the same county.

Upon examining the order made by the two justices in this case, it is plain that not one of the facts thus shown to be requisite to their jurisdiction is recited therein. It is an order quite proper under the former bastardy act, but wholly inappropriate to the present act. It fails to show any application to either of the two justices, or any ascertainment by either of them, of the father of the bastard, or any warrant issued, or any return thereof with the person charged in custody, or with the bond required, or any calling to his aid of one of the two justices by the other.

Nor can there be found in the proceedings the facts which show jurisdiction. The application to the justice does not appear to be made in a proper case, nor by the overseer of the proper township, nor to a justice of the proper county. The justices' warrant is not such as the act directs. And there is nothing to show any inquiry into the facts, nor any ascertainment of the father in the mode the act expressly requires.

The record and order of this tribunal failing to show such facts as gave it jurisdiction of the subject matter adjudicated on, must, on well-settled principles, fail of validity, unless it has otherwise acquired validity.

Such force cannot be attributed to it, on the ground that the person charged did in fact appear before the justices and contest the charge. His consent could not confer jurisdiction on them.

But it is insisted that the act of prosecutor in appealing to the Sessions, and the order then made after a trial on the merits, prevent the errors of the order of the two justices from being now considered.

Under the former act, it was held that the Sessions sat, in such cases, not as a court of error, but as a court of appeal, whose duty it was to retry the case on the merits. When an appeal was taken and a decision thereon reached, it was held to preclude this court from looking behind the adjudication of the Sessions and inquiring into alleged errors of procedure before the two justices. *Dunn* v. *South Amboy*, 3 *Vroom* 275; *Hurff* v. *Overseer*, 9 *Vroom* 287.

It has been urged by counsel that by the present act, the Sessions is, at least to some extent, constituted a court of error. This contention is based on the peculiar provisions of section 20, (*Rev*, *p.* 73,) which provides that after a decision on appeal, against the person charged, the Sessions shall examine the order of filiation and reduce or increase the sum thereby directed to be paid, " but the same shall not be quashed for any defects in the form thereof, but the same shall be amended by the court, according to the facts and justice of the case."

This section came under the consideration of this court in *Overseer* v. *Pickell*, 14 *Vroom* 355, and it was held that when an adjudication of the justices in favor of the person charged has been appealed from, the Sessions, if their adjudication be against him, have the power to make an original order of filiation and maintenance. But the contention here is, that when an order of filiation and maintenance has been made below, the power of the Sessions is only to reduce or increase the amount therein fixed, amending the form of the order, according to the facts and justice of the case.

But this case does not require an expression of opinion upon

Tompkins v. Schomp.

this subject. If the power of the Sessions is no greater than that contended for, the new order is erroneous. The original order was not amended with respect to the main error complained of. Indeed it was not capable of such amendment, because the omission of matter necessary to give jurisdiction is an error of substance and not of form.. *Overseer of Princeton* v. *Overseer of South Brunswick*, 3 *Zab.* 169.

On the other hand, if the Sessions remain under the present act, empowered to make an original order in all cases, the error here complained of is not one which is waived by an appeal. It is not an error of procedure. It is of want of jurisdiction that complaint is made. In *Dunn* v. *South Amboy* and *Hurff* v. *Overseer, supra,* the orders below plainly showed the jurisdiction of the two justices. The errors complained of were errors in the mode of procedure. With respect to such errors, it was well held that an appeal was a conclusive waiver and that, when jurisdiction appeared, the order of the Sessions superseded the order below, and errors in the procedure there were, in consequence, immaterial.

In the case before us, the error is fundamental, and a different principle applies. Upon the face of the proceedings it appeared that the two justices had not acquired jurisdiction. In such circumstances it is plain that an appeal would not confer jurisdiction on the Sessions to try the case or make an adjudication thereon. Such was the conclusion of this court in an analogous case. *Overseer of Princeton* v. *Overseer of South Brunswick, supra.* There an order of justices for the removal of a pauper, was plainly defective for want of recital of jurisdictional facts. On appeal, the Sessions refused to try the case and quashed the order. On *certiorari* the action of the Sessions was sustained. With reference to the lack of jurisdiction, Chief Justice Green said, "The case must appear to have been within the scope of their [the justices'] authority, otherwise their act will be deemed a usurpation of power, and their proceeding *coram non judice;* in such case there can be no trial on the merits before the Sessions."

The result is that the objection made and above discussed,

is fatal to both orders, which must be set aside. This renders unnecessary the consideration of the many other reasons urged in the argument.